UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TONY D.,

                Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

**DECISION AND ORDER**

6:20-CV-06422 EAW

## INTRODUCTION

Represented by counsel, Plaintiff Tony D. ("Plaintiff") brings this action pursuant to Title II and Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his application for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).

Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 12; Dkt. 19), and Plaintiff's reply (Dkt. 20). For the reasons discussed below, the Commissioner's motion (Dkt. 19) is granted and Plaintiff's motion (Dkt. 12) is denied.

## BACKGROUND

Plaintiff protectively filed his application for DIB on August 10, 2016, and SSI on August 16, 2016.[1] (Dkt. 11 at 18, 202-214). In his applications, Plaintiff alleged disability beginning August 23, 2012, due to rheumatoid arthritis, polyarthritis, seronegative spondyloarthropathy, polyarthralgia, chronic low back pain, and hypothyroidism. (*Id.* at 18, 206). Plaintiff's applications were initially denied on September 20, 2016. (*Id.* at 18, 64, 74). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Kenneth Theurer in Horseheads, New York on November 16, 2018. (*Id.* at 31-63). On January 17, 2019, the ALJ issued an unfavorable decision. (*Id.* at 18-26). Plaintiff requested Appeals Council review; his request was denied on April 20, 2020, making the ALJ's determination the Commissioner's final decision. (*Id.* at 4-9). This action followed.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more

---

[1]  When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.  Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. §§ 404.1520(d), 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id*. §§ 404.1509, 416.909), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. §§ 404.1520(e), 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. §§ 404.1520(f), 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. §§ 404.1520(g), 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I.  The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920. Initially, the ALJ

determined that Plaintiff met the insured status requirements of the Act through December 31, 2016. (Dkt. 11 at 20). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since August 23, 2012, the alleged onset date. (*Id.*).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of rheumatoid arthritis ("RA") and fibromyalgia. (*Id.* at 21). The ALJ found that Plaintiff's medically determinable impairment of lumbar spine impairment was non-severe. (*Id.*).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.*). The ALJ particularly considered the criteria of Listing 14.09 in reaching this conclusion. (*Id.*).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except with the additional limitations that:

> [Plaintiff] can occasionally lift and carry 20 pounds; frequently lift and carry 10 pounds; sit for up to 6 hours; stand or walk for approximately 6 hours in an 8 hour workday with normal breaks; occasionally climb ramps or stairs; never climb ramps,[2] ladders or scaffolds; can perform occasional balancing, stooping, kneeling, crouching and crawling; should not perform more than

---

[2]  The Court notes that the RFC's limitation with respect to Plaintiff's ability to climb ramps is inconsistent. This inconsistency was not raised by Plaintiff in his motion and is not material to the Court's analysis herein, and therefore, any error arising from the inconsistency is harmless. *See Young, v. Kijakazi*, No. 20-CV-03604 (SDA), 2021 WL 4148733, at *11 (S.D.N.Y. Sept. 13, 2021) ("However, even assuming arguendo that the ALJ failed to consider Dr. Junga's opinion at all, the Court finds the ALJ's error harmless, because there is no reasonable likelihood that the ALJ's consideration of Dr. Junga's opinion would have changed the administrative outcome."); *Snyder v. Colvin*, No. 5:13-CV-585 GLS/ESH, 2014 WL 3107962, at *4 (N.D.N.Y. July 8, 2014) ("[A]dministrative legal error is harmless when the same result would have been reached had the error not occurred.").

  frequent reaching or fine manipulation such as repetitive hand-finger actions, fingering or feeling with either hand, but retains the ability to grasp, hold, turn, raise of lower objects with either hand. [Plaintiff] can sit for no more than 30 minutes at a time before needing to alternate to a standing position for no more than 5 minutes while remaining on task and at his work station.

(*Id.* at 21-22).

  At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (*Id.* at 24).

  At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of bottle line attendant, cafeteria attendant, and school bus monitor. (*Id.* at 25). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.*).

## II. The Commissioner's Determination is Supported by Substantial Evidence and Free from Reversible Error

  Plaintiff argues that this matter must be remanded for further administrative proceedings because the ALJ (1) failed to properly weigh the opinion of Plaintiff's treating nurse practitioner and (2) failed to explain his reasoning in not more fully crediting Plaintiff's testimony. (Dkt. 13 at 9-18). The Court is not persuaded by these arguments, for the reasons discussed below.

### A. Weighing of opinion of Karen Gorenflo, NP

  Plaintiff's first argument is that the ALJ erred in evaluating the opinion offered by Nurse Practitioner Karen Gorenflo. (Dkt. 13 at 9-16). In assessing a disability claim, an

ALJ must consider and weigh the various medical opinions of record. In this case, the ALJ assessed the opinions of NP Gorenflo in determining Plaintiff's RFC.

Because Plaintiff's claim was filed before March 27, 2017, the ALJ was required to apply the treating physician rule, under which a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record[.]" 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Under the treating physician rule, if the ALJ declines to afford controlling weight to a treating physician's medical opinion, he or she "must consider various factors to determine how much weight to give to the opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (internal quotation marks omitted). These factors include:

> (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

*Id*.

An ALJ must "give good reasons in [his] notice of determination or decision for the weight [he gives to the] treating source's medical opinion." 20 C.F.R. §§ 404.1527 (c)(2), 416.927(c)(2); *see also Harris v. Colvin*, 149 F. Supp. 3d 435, 441 (W.D.N.Y. 2016) ("A corollary to the treating physician rule is the so-called 'good reasons rule,' which is based on the regulations specifying that 'the Commissioner "will always give good reasons"' for the weight given to a treating source opinion." (quoting *Halloran*, 362 F.3d at 32)). "Those

good reasons must be supported by the evidence in the case record, and must be sufficiently specific[.]" *Harris*, 149 F. Supp. 3d at 441 (internal quotation marks omitted).

Under the Commissioner's regulations applicable to Plaintiff's claim, nurse practitioners, such as NP Gorenflo, are not acceptable medical sources. *Coger v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 427, 432 (W.D.N.Y. 2018) ("[N]urse practitioners are not considered 'acceptable medical sources,' and their opinions are therefore not 'entitled to any particular weight.'" (alteration omitted and quoting *Wider v. Colvin*, 245 F. Supp. 3d 381, 389 (E.D.N.Y. 2017)). Nevertheless, an ALJ should consider evidence from "other sources," such as nurse practitioners, on important issues like the severity of an impairment and any related functional effects. *See* SSR 06-3p, 2006 WL 2329939 (S.S.A. Aug. 9, 2006). An ALJ may not disregard opinion evidence from a nurse practitioner or "other source" solely because it was not authored by an acceptable medical source. *See Canales v. Comm'r of Soc. Sec.*, 698 F. Supp. 2d 335, 344 (E.D.N.Y. 2010) (holding that ALJ erred in disregarding opinion of social worker simply because it was the opinion of an "other source," and "not on account of its content or whether it conformed with the other evidence in the record"). However, the ALJ "has the discretion to determine the appropriate weight to accord the [other source]'s opinion based on all the evidence before him[.]" *Diaz v. Shalala,* 59 F.3d 307, 314 (2d Cir. 1995).

NP Gorenflo completed a report on July 1, 2016 for the County Department of Social Services. (Dkt. 11 at 300-01). In it, NP Gorenflo noted that Plaintiff has the following medical conditions: rheumatoid arthritis, back strain, hypothyroid, and polyarthralgia. (*Id.* at 300). In terms of physical functioning, NP Gorenflo opined that

Plaintiff is moderately limited in walking, standing, sitting, lifting/carrying, pushing/pulling/bending, using his hands, and stairs or other climbing. (*Id.* at 301). With respect to mental functioning, NP Gorenflo indicated that Plaintiff appears very limited in his ability to function in a work setting at a consistent pace. (*Id.*). She further opined that Plaintiff's physical and mental limitations preclude him from working in competitive employment for at least 80 hours per month and that his restrictions were permanent. (*Id.*).

The ALJ gave NP Gorenflo's opinion that Plaintiff had moderate limitations in physical functioning partial weight. He explained that the physical assessment completed by NP Gorenflo is "broadly consistent with the above established residual functional capacity and supports a finding that [Plaintiff] retains the ability to perform a range of physical work activities." (Dkt. 11 at 24). Plaintiff does not challenge the attribution of partial weight to this opinion from NP Gorenflo.

With respect to NP Gorenflo's opinion that Plaintiff possesses a "very limited" mental rating, the ALJ gave that opinion little weight. His first reason for providing little weight to the opinion was that Plaintiff does not have a mental impairment. (Dkt. 11 at 24). Second, the ALJ noted that the form "is a checkbox document with no explanation or justification by NP Gorenflo for the particular choices indicated, including for the 'very limited' rating, such that the usefulness of this form is limited." (*Id.*). Finally, he pointed

out that "NP Gorenflo's treatment notes consistently document [Plaintiff] as presenting as alert, awake and in no distress, which does not support the 'very limited' rating." (*Id.*).

Plaintiff contends that the ALJ's assessment of NP Gorenflo's opinion that he was "very limited" in his ability to function at a consistent pace was improper. The Court disagrees.

The ALJ's first reason for not fully crediting NP Gorenflo's conclusion that Plaintiff was "very limited" in mental functioning was the fact that Plaintiff does not have a mental impairment. Plaintiff does not dispute the fact that he does not suffer from a mental impairment but contends that the pain from his fibromyalgia could affect his mental ability to do work. (Dkt. 13 at 13 ("As to NP Gorenflo's mental limitation opinion, while Plaintiff may not have a mental impairment, it is clear he suffers from pain associated with his fibromyalgia.")). Accordingly, he argues that the limitation imposed by NP Gorenflo is "based on Plaintiff's fibromyalgia symptoms, however, not an alternate 'mental impairment' which does not exist in this record." (*Id.* at 14).

While it is certainly possible that NP Gorenflo's opinion on Plaintiff's mental functioning limitation is based on Plaintiff's pain from his fibromyalgia as Plaintiff suggests, her opinion does not expressly indicate as much and it was not error for the ALJ to discount the opinion based on its objective inconsistency with Plaintiff's actual limitations. Further, the Court rejects Plaintiff's invitation to speculate that NP Gorenflo was opining that Plaintiff's pain caused a pace limitation, particularly where she did not so state and where she also opined that Plaintiff had no evidence at all of other mental

limitations, including an ability to understand and remember instructions, carry out instructions, maintain attention/concentration, or make simple decisions.

Second, the Court finds that the ALJ properly considered the fact that NP Gorenflo's opinion was largely contained in a check-box form. *See Heaman v. Berryhill*, 765 F. App'x 498, 501 (2d Cir. 2019) (upholding ALJ's decision that "provided 'good reasons' for giving the treating physicians' opinions less weight, including that their opinions were merely checkbox forms that offer little or nothing with regard to clinical findings and diagnostic results, and, further, were inconsistent with the moderate findings reflected in the doctors' notes") (internal citations and quotation omitted); *Goodale v. Astrue*, 32 F. Supp. 3d 345, 358 (N.D.N.Y. 2012) (ALJ did not err by giving little weight to treating physician's opinion that used a "check box" form that counsel had provided). While the use of a check-box form alone is a not a basis to reject an opinion, the lack of explanation provided for an opinion is problematic and properly considered by the ALJ, because it does not provide insight into the basis for the opinions. Here, in particular, the lack of supporting explanation for NP Gorenflo's opinion that Plaintiff is "very limited" in his ability to function in a work setting at a consistent pace is unhelpful for the reasons explained above.

Finally, it was appropriate for the ALJ to note the lack of consistency between some notations in NP Gorenflo's records and a "very limited" mental rating. Plaintiff highlights records from NP Gorenflo which reflected complaints of pain in his feet, ankles, knees, elbows, wrists, lower back, shoulders, and hands (Dkt. 11 at 472), a pain rating of eight out of ten (*id.* at 471), observations of difficulty standing, moving his hands, walking, and raising his arms (*id.* at 471), radiating pain in his left thigh following a flare up of

fibromyalgia and RA requiring an emergency room visit (*id.* at 465), and limited range of motion in his left leg and pain with lifting his leg and lying down (*id*. at 466), to support his contention that NP Gorenflo's medical notes are consistent with her restrictive opinion. But the ALJ did not wholly discount Plaintiff's pain complaints, as they are reflected in NP Gorenflo's and other providers' records, and indeed, accounted for them in the RFC. The ALJ expressly credited Plaintiff's complaints of pain requiring him to take breaks in activities by including a limitation in the RFC for an ability to change positions every 30 minutes, while remaining on task. (*Id.* at 23). A limitation on the use of Plaintiff's hands for reaching were included for similar reasons. (*Id.*). Moreover, NP Gorenflo's records do contain notations documenting Plaintiff presenting as alert, awake, and in no distress (Dkt. 11 at 466, 469), as noted by the ALJ, and it was not improper for him to consider that in considering the opinion's consistency with the evidence of record in determining what weight it is due. *See Feliciano o/b/o D.F. v. Comm'r of Soc. Sec.*, No. 1:18-CV-00502 EAW, 2020 WL 1815754, at *5 (W.D.N.Y. Apr. 10, 2020) ("The ALJ is not required to reconcile explicitly every conflicting shred of medical testimony." (internal quotation and citation omitted)).

In sum, the ALJ properly assessed NP Gorenflo's opinion, which is not entitled to controlling weight. The ALJ discussed her opinion in the written determination and explained the weight accorded to it, and it is apparent to the Court why the ALJ gave the

opinion the weight that he did.  That is all that is required under the circumstances, and remand is not required on this basis.

       **B.**      **Evaluation of Plaintiff's credibility**

Plaintiff's second and final argument is that the ALJ's "consistency finding" is unsupported by substantial evidence, and the ALJ erred in assessing the credibility of his subjective complaints.  (Dkt.13 at 16-18).  Plaintiff raises several issues relating to the ALJ's evaluation of his subjective complaints, including the ALJ's conclusion concerning Plaintiff's activities of daily living and his failure to discuss how the probative evidence in the medical record factored in his determination.  For the reasons set forth below, the Court finds no error in the ALJ's credibility assessment.

The ALJ, who usually has the "only opportunity to observe witnesses' demeanor, candor, fairness, intelligence and manner of testifying," is "best-positioned to make accurate credibility determinations." *Whiting v. Astrue*, No. CIV.A. 1:12-274, 2013 WL 427171, at *6 (N.D.N.Y. Jan. 15, 2013), *report and recommendation adopted*, 2013 WL 427166 (N.D.N.Y. Feb. 4, 2013).  As such, "credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are patently unreasonable." *Perez v. Barnhart*, 440 F. Supp. 2d 229, 235 (W.D.N.Y. 2006) (quotation omitted).

In assessing the credibility of a claimant's subjective complaints, the Commissioner's regulations require ALJs to employ a two-step inquiry.  *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010).  "First, the ALJ must determine whether the claimant suffers from a 'medically determinable impairment[ ] that could reasonably be expected to produce'" his symptoms.  *Id*. (quoting 20 C.F.R. § 404.1529(c)(1)).  "Second,

the ALJ must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's [subjective] contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." *Id*.

In this case, the ALJ applied the two-step inquiry.  At the first step, he found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but that his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]"  (Dkt. 11 at 22).  Accordingly, the ALJ assessed Plaintiff's credibility, and then discussed several reasons why Plaintiff's allegations were not fully credible.

First, the ALJ noted that despite Plaintiff's complaints about the intensity, persistence, and limiting effects of his symptoms, they are not fully consistent with the objective evidence of record.  Contrary to Plaintiff's contention, the ALJ cited to numerous medical treatment records for his conclusion.  In particular, the ALJ noted:

> [Plaintiff] was initially evaluated by a rheumatologist, Jackie Clowes, M.D., in March 2013 and he was diagnosed with seronegative spondyloarthropathy, based on normal bloodwork for inflammatory markers (Exhibit 8F).  He last saw Dr. Clowes in September 2014 and did not see another rheumatologist, James Freeman, M.D., until May 2016 (Exhibit 8F).  New blood work showed positive inflammatory markers, including rheumatoid factor and CCP, but with a repeated normal sedimentation rate (Exhibits 3F, 9F, 11F).  Dr. Freeman also added a diagnosis of fibromyalgia in October 2016 (Exhibit 11F, page 24).  MRIs of the hands showed subclinical synovitis of a few joints and erosion of the right 2nd MCP joint (Exhibit 11F, pages 11, 23).  Clinical findings from rheumatological and primary care examinations include "widespread" trigger points, tenderness of the upper extremity joints, episodes of swelling of the left 3rd PIP joint and right 2nd MCP joint,

generally preserved ranges of motion of the upper and lower extremities, a normal gait, normal sensation, no nodules of the hands and negative tenderness of the SI joints (Exhibits 3F, 9F, 10F, 11F). Multiple examinations by Dr. Freeman found no active synovitis and primary care provider examinations have been negative for edema (Exhibits 3F, 4F, 9F, 10F, 11F). Several treatment notes from Dr. Freeman suggest that [Plaintiff's] RA is stable, but the fibromyalgia is [Plaintiff's] primary issue (Exhibits 3F, 9F, 11F). [Plaintiff's] reports to his rheumatologist generally include joint pain without much swelling, morning stiffness for 1-3 hours and toleration of medication without reported side effects. Dr. Freeman has adjusted his medications in light of [Plaintiff's] reports of continuing joint discomfort (Exhibits 3F, 9F, 11F). The clinical findings are consistent with and support a finding for light work with use of the upper right extremities limited to no more than frequently.

(Dkt. 11 at 23).

Second, the ALJ considered Plaintiff's ability to perform a wide range of activities of daily living. Specifically, the ALJ noted that:

Plaintiff provides daily care to children ages 6, 11 and 12 and has done so for the past 2 years. [Plaintiff] is able to do light household chores, drives a car and cares for his personal needs without assistance although he reports some problems dressing in the morning. [Plaintiff's] activities of daily living are consistent with [an RFC] to perform light work with some nonexertional limitations.

(Dkt. 11 at 23).

While it is true that the capability to perform activities of daily living is not inherently inconsistent with a finding of disability, "[t]he law is clear that the ALJ may consider . . . [a claimant's] purported activities of daily living for the purposes of a credibility determination." *Cahill v. Astrue*, No. 1:11-CV-148, 2012 WL 3777072, at *5 (D. Vt. Aug. 29, 2012). Indeed, the Commissioner's regulations expressly identify "daily activities" as a factor the ALJ should consider in evaluating the intensity and persistence of a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3)(i); 416.929(c)(3)(i). In

considering activities of daily living, "[t]he issue is not whether the clinical and objective findings are consistent with an inability to perform all substantial activity, but whether plaintiff's statements about the intensity, persistence, or functionally limiting effects of his symptoms are consistent with the objective medical and other evidence." *Morris v. Comm'r of Soc. Sec.*, No. 5:12-CV-1795 MAD/CFH, 2014 WL 1451996, at *6 (N.D.N.Y. Apr. 14, 2014). This is so because "[o]ne strong indication of credibility of an individual's statements is their consistency, both internally and with other information in the record." *Id.* The Court is not persuaded that the ALJ mischaracterized or exaggerated Plaintiff's activities of daily living and his other reasons for not finding him fully credible were sound.

In sum, the Court finds no error in the ALJ's credibility assessment. The ALJ applied the two-step inquiry and set forth well-supported reasons for finding Plaintiff's subjective allegations less than fully credible. Plaintiff has not shown that remand on this basis is warranted.

## **CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 19) is granted and Plaintiff's motion for judgment on the pleadings (Dkt. 12) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:   September 20, 2021
         Rochester, New York